In the Matter of P & E BOAT RENTALS, INC., etc.

Charles COLLINS,
Appellant/Cross–Appellee,

v.

MARTZELL, THOMAS & BICKFORD,
John R. Martzell, Jr.,
Appellee/Cross–Appellant.

No. 89–3830.

United States Court of Appeals,
Fifth Circuit.

March 28, 1991.

Julian R. Murray, Jr., Murray, Braden, Gonzalez & Richardson, New Orleans, La., for appellant/cross-appellee.

Dermot S. McGlinchey and Eve Barrie Masinter, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for appellee/cross-appellant.

Before POLITZ, WILLIAMS, and JONES, Circuit Judges.

POLITZ, Circuit Judge:

The district court divided a contingent fee between two attorneys, doing so on a *quantum meruit* basis, awarding John R. Martzell and his law firm of Martzell, Thomas & Bickford, 85% of the fee and Charles L. Collins the remaining 15%. Collins appealed; Martzell cross-appealed. For the reasons assigned, we affirm.

*Background*

The instant attorney fee dispute arose out of the effort by Cheryl Fusselman to recover damages for the death of her husband in a maritime accident. Mrs. Fusselman was referred to Collins by their common pastor. At that time Collins was working as a landman for Amoco and, although apparently allowed the privilege of a measure of private practice which did not conflict or interfere with his salaried employment,[1] he had neither the time, experience, or resources to handle this significant legal matter. Collins accepted the case with the understanding that he would associate an experienced trial attorney capable of handling this type of litigation properly. Collins explained to Mrs. Fusselman that she would have two attorneys who would share the agreed contingent fee of 40% of all sums recovered in excess of $150,000.

Collins associated John R. "Jack" Martzell of the firm of Martzell, Thomas & Bickford, an attorney known for his broad experience in this field of law. The record is unclear as to the exact nature of any fee agreement between Collins and Martzell. Collins contends that they agreed to divide the fee equally. Apparently on some prior relatively minor matters that had been the division. What is clear from the record is that Martzell's firm assumed total responsibility for the case, both in its factual and

---

1. There is some question whether Collins was permitted to maintain a private practice. One of his superiors said that he could not. His immediate supervisor demurred as to minimal private practice but ruled out the prosecution of any claim against a company, such as Chevron, with whom Amoco had business dealings. We do not decide that issue but are cognizant of its relevance in a proper setting.

legal preparation and in financial exposure for substantial pre-litigation and litigation expenses. Martzell monitored and attended the coast guard hearings, drafted and filed all pleadings, conducted all discovery, and devised and honed the legal theory of the case. Martzell tried the case and handled the appeal to this court. The case settled after the appeal, pending writ application to the Supreme Court, with the Martzell firm handling the negotiations for Mrs. Fusselman. Further, the firm obtained approval from the state court for the children's settlement, obtained the death certificate and secured life insurance benefits for Mrs. Fusselman. Between the trial and the completion of the appeals process Mrs. Fusselman separately executed a contingency fee agreement with the Martzell firm.

In the meantime, Collins' involvement was at best minimal. He initially maintained contact with Mrs. Fusselman and served as the contact person. He was present for some of the depositions and attended the trial as a spectator. He opened tutorship and succession proceedings on behalf of the children. He also assisted Mrs. Fusselman with a social security problem but was paid separately for that work. After his employment with Amoco terminated, Collins made himself available, as trial neared, but there was then nothing to do for which he was qualified. During a part of the period at issue Collins was an assistant district attorney and barred from the private practice of law.

When the suit was settled Mrs. Fusselman received her net proceeds. By agreement the disputed one-half of the attorneys' fee was placed in an interest bearing account pending a judicial division between Collins and the Martzell firm. That apportionment was made as above noted and this appeal followed.

**2.** In Rule IV of the Rules of Disciplinary Enforcement of the Eastern District of Louisiana the court adopted "the Code of Professional Responsibility adopted by the Supreme Court of the State of Louisiana." Currently there is a similar provision in Rule 20.04 of the Uniform Local Rules for all three Louisiana districts that adopts the Rules of Professional Conduct that became effective in Louisiana in 1987.

*Analysis*

■ The district court appropriately looked to the law of Louisiana, including its ethical standards and rules, in resolving this fee dispute.[2] Collins first contacted Martzell about the Fusselman matter in 1983. At that time the Code of Professional Responsibility adopted by the Louisiana Supreme Court regulated and controlled the ethical aspects of the practice of law in Louisiana.[3] Disciplinary Rule 2–107 (D.R. 2–107) prohibited a lawyer from dividing a legal fee with another lawyer who was neither his partner nor associate unless:

(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.

(2) The division is made in proportion to the services performed and responsibility assumed by each.

(3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the clients.

Under this standard, fees may be divided only on a *quantum meruit* basis. Collins may receive payment only for the services he performed and the responsibilities he assumed. *Seal v. Pipeline, Inc.*, 731 F.2d 1194 (5th Cir.1984); *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102 (La. 1978). The factors detailed in D.R. 2–106(B) guide the determination of the fair value of the contributions of each attorney. These factors include the time and labor required, the novelty and difficulty of the issue, the skill required, the likelihood that acceptance of the work might prevent the attorney from accepting other opportunities, and the experience, reputation, and abilities of the attorney.[4]

Collins argues that controlling Louisiana precedent does not permit the application

**3.** *See* Rule XIX, Louisiana Supreme Court Rules.

**4.** In January 1987 the Rules of Professional Conduct adopted by the Louisiana Supreme Court became effective. Rule 1.5(e) provides that lawyers not of the same firm may divide a fee only if:

of D.R. 2–107 to this dispute, inviting our attention to *McCann v. Todd,* 203 La. 631, 14 So.2d 469 (1943). In *McCann* the Louisiana Supreme Court used a joint venture theory to resolve an attorney fee division dispute. Collins misperceives the dispositive law. Nearly a half-century after *McCann* the Louisiana Supreme Court, which has plenary authority over the admission and discipline of attorneys in Louisiana, adopted the Code of Professional Responsibility to govern the conduct of attorneys within its jurisdiction.[5] *McCann* and any other previous rulings by Louisiana's highest and intermediate courts necessarily must yield to the Supreme Court's subsequent exercise of its plenary authority over the subject attorneys.[6]

■ Collins further maintains that the district court erred by not enforcing the alleged agreement between counsel for an equal division of the fee. We do not agree. No such agreement validly could have been made under the Code of Professional Responsibility unless the attorneys equally assumed responsibility for the matter and performed essentially equal services.[7] The record clearly establishes that there was neither a joint assumption of responsibility nor equivalent performance of services. No contract between counsel which is in conflict with controlling ethical standards should be recognized and enforced by the court. No such contract as that advanced by Collins will be recognized herein.

■ On cross-appeal Martzell contends that the trial court erred in awarding Col-

lins 15% of the fee. We perceive no error. Although Collins' hands-on participation was minimal, he vouched for and assumed responsibility for the quality of the work Martzell performed, he monitored developments, early-on acted as contact with Mrs. Fusselman, and did the work requested of him. He was entitled to a portion of the net fee. We are not prepared to say that the 15% apportionment as determined by the trial court was, as a factual matter, clearly erroneous, or, as a matter of law, in error.

The judgment of the district court is AFFIRMED.

---

(1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;
(2) the client is advised and does not object to the participation of all the lawyers involved; and
(3) the total fee is reasonable.
The factors for determining the reasonableness of a fee under D.R. 2–106 are found in Rule 1.5(a) of the new Rules.

5. *See* La. Const. Art. V, § 35(A) & (B); Rule XIX, Louisiana Supreme Court Rules.

6. Even if *McCann* survived the subsequent Code, the application of its ruling has been limited to instances in which the client and the attorneys

have signed a single contract of employment. *See DeFrancesch v. Hardin,* 510 So.2d 42 (La. App.), *writ denied,* 513 So.2d 819 (1987); *Fontenot & Mitchell v. Rozas, Manuel, Fontenot & McGee,* 425 So.2d 259 (La.App.1982), *writ denied,* 432 So.2d 268 (La.1983).

7. The Rules of Professional Conduct which replaced the Code of Professional Responsibility in 1987 continued the requirement of a division of fees based on the proportion of services rendered. The new Rules modified the earlier Code, however, by allowing a fee division based other than on the measure of services rendered, but only if "by written agreement with the client, each lawyer assumes joint responsibility for the representation." Rule 1.5(e)(1). Whether decided under the prior Code or the current Rules, today's disposition would be the same.