**In re William Samuel RIKER, Debtor.**

**No. 01–31370–BKC–SHF.**

United States Bankruptcy Court,
S.D. Florida.

Sept. 12, 2002.

Michael R. Bakst, West Palm Beach, FL, for debtor.

Marc P. Barmat, Boca Raton, FL, for trustee.

### ORDER GRANTING TRUSTEE'S OBJECTION TO EXEMPTIONS AND DENYING TRUSTEE'S MOTION TO STRIKE SECOND AMENDMENT TO SCHEDULES

STEVEN H. FRIEDMAN, Bankruptcy Judge.

THIS MATTER came before the Court on July 13, 2002 upon the Trustee's Objection to Exemptions and Motion to Strike Second Amendment to Schedules. The Trustee asserts that the Debtor's claim of exemptions exceeds the $1,000.00 personal property exemption. The Trustee also asserts that the Debtor's Second Amendment to Schedules was filed in bad faith and should be stricken. The Court, having considered the Trustee's Objection to Exemptions and the Trustee's Motion to Strike Second Amendment to Schedules, and for the reasons set forth below, **sustains** the Trustee's Objection to Exemptions and **denies** the Trustee's Motion to Strike Second Amendment to Schedules.

#### Factual and Procedural Background

This case was commenced on March 21, 2001, with the Debtor's filing of his voluntary chapter 7 petition. On June 16, 2000, and prior to the filing of this case, the Debtor met with Douglas Mars and Patricia Mars to handle Douglas Mars's automobile personal injury matter. The Debtor filed a lawsuit on behalf of Mr. and Mrs. Mars and performed some discovery prior to the filing of the instant bankruptcy. On February 2, 2001, the Debtor, on behalf of the Marses, arranged to have the law firm of Montgomery and Larson litigate the Marses' case, which was settled for $300,000 on or before May 14, 2001. Pursuant to the contingency fee agreement and the Consent to Referral of Case Agreement, the Debtor is entitled to a referral fee, based on the amount of the settlement, of $30,000. Montgomery and Larson is holding in trust the $30,000 allocated to the Debtor as his fee.

#### Objection to Exemptions

When the Debtor filed his chapter 7 petition, a bankruptcy estate was created. Pursuant to 11 U.S.C. § 541(a), the estate is comprised, *inter alia*, of "all legal or equitable interests of the debtor in property as of the commencement of the case", subject to certain specific exceptions. The Ninth and Fifth Circuits have addressed the issue of how contingency fees for legal representation that began pre-petition and continued post-petition are to be handled in bankruptcy. *See In re Jess*, 169 F.3d 1204 (9th Cir.1999); *Turner v. Avery*, 947 F.2d 772 (5th Cir.1991). The Court agrees with the analysis of the Ninth and Fifth Circuits. Specifically, this Court agrees with the Court in *Jess*, that the correct approach is to determine:

> whether any postpetition services are necessary for obtaining the payment at issue. If not, the payments are entirely "rooted in the pre-bankruptcy past" and the payments will be included in the estate. If some postpetition services are necessary, then courts must determine the extent to which the payments are attributable to the postpetition services and the extent to which the payments are attributable to prepetition services. That portion of the payments attributable to postpetition services will not be property of the estate.

*In re Jess* at 1208 (quoting *In re Wu*, 173 B.R. 411, 414–15 (9th Cir. BAP 1994)). According to *Jess*, the threshold determination is whether the performance by the Debtor of any of his postpetition services was a prerequisite to his obtaining the $30,000 referral fee.

726

Upon the Debtor's referral of the Mars litigation to Montgomery and Larson, the Debtor's sole involvement in the case was maintaining some telephone contact with Patricia Mars. The Debtor did not speak with Mr. Mars, nor did the Debtor consult with Mr. Mars regarding the settlement. Additionally, the Debtor did not participate in discovery, appear at any deposition or client conferences, nor did the Debtor appear at mediation. Thus, although the Debtor did file the complaint initiating the Mars litigation, he served solely in an advisory capacity to Mr. and Mrs. Mars after he referred the case to Montgomery and Larson. Once the Debtor referred the Mars litigation to Montgomery and Larson, Montgomery and Larson performed all aspects of the litigation. The Debtor's services were not necessary for obtaining the payment at issue. Therefore, the Debtor's portion of the contingency fee is entirely "rooted in the pre-bankruptcy past", and the entire payment of $30,000 must be included in the estate. Because none of the Debtor's postpetition services were necessary for Montgomery and Larson's achieving a settlement of the Mars matter, this Court need go no further in analyzing the extent to which the payment is attributable to the postpetition services and the extent to which the payment is attributable to prepetition services.

On the Debtor's Schedule C, he claims various items of property as exempt under Article X, Section 4(a)(2) of the Florida Constitution, including cash in the amount of $10.00, proceeds of his Bank of America Checking Account (account number 1441566637) in the amount of $118.00, household furnishings totaling $250.00, office furnishings and equipment totaling $250.00, proceeds of his Lind–Waldock Ac-

count (account number 576535) in the amount of $33.35, and proceeds of his ED & F Man International Account (account number 28992) in the amount of $33.32. The total of these exemptions is $694.67. Because the Florida Constitution allows the Debtor a personal property exemption of $1000.00, he is entitled to claim an additional $305.33 of personal property as exempt. Therefore, although the entire referral fee of $30,000.00 is property of the estate, the Debtor may claim an amount up to $305.33 of the referral fee as exempt.

### *Motion to Strike Second Amendment to Schedules*

■ The Trustee asserted that Debtor's Second Amendment was filed in bad faith because it was filed over a year after the Debtor filed his bankruptcy petition and because it lists the Debtor's Contingency Fee Contract as an asset which should have been disclosed in the initial bankruptcy filing. However, pursuant to Bankruptcy Rule 1009(a), a Debtor has a general right to amend his schedules and may do so at any time before the case is closed. Therefore, the Debtor's Second Amendment to Schedules is permissible. Accordingly, it is

**ORDERED** that

(1) the Trustee's Objection to Exemptions is **sustained.**

(2) the Trustee's Motion to Strike Second Amendment to Schedules is **denied.**