**In re Paul Clayton JESS, Debtor.**

**Paul Clayton Jess, Appellant,**

**v.**

**Raymond Carey, Trustee, Appellee.**

**No. 98–15195.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 1999.

Decided March 9, 1999.

Paul Clayton Jess, Sonoma, California, pro se, for the appellant.

Ray H. Olmstead, Santa Rosa, California, for the appellee.

Before: WOOD, JR.,[1] DAVID R. THOMPSON and THOMAS, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Chapter 7[2] debtor Paul Clayton Jess ("Jess"), an attorney, appeals a Bankruptcy Appellate Panel ("BAP") decision affirming a bankruptcy court decision that granted, following a bench trial, the bankruptcy trustee's request that Jess turn over to the estate a portion of a contingent-fee payment attributable to pre-petition legal work performed by Jess. Jess argues that the fee is not property of the estate because he had no right to collect it until services which he rendered post-petition were completed and a recovery was made for the benefit of his client.

Jess also contends the bankruptcy court made insufficient findings of fact, denied him due process by failing to give him a full and fair trial, and abused its discretion in denying his motion for a new trial.

We have jurisdiction pursuant to 28 U.S.C. § 158(d), and we affirm.

## BACKGROUND

On June 24, 1994, Jess, an attorney acting pro se, filed a Chapter 11 bankruptcy petition.[3] Prior to filing this petition, Jess had entered into a contingent-fee contract with a client in what became known as the "Klouds–Pacey litigation." Under that contract, Jess was to receive one-third of any recovery obtained for his client by settlement before arbitration or trial, and forty percent of any recovery obtained after commencement of arbitration or trial.

Jess worked on the case both pre-petition and post-petition, and he kept track of his time. In June 1995, he collected a contingent fee of $156,000. He kept the full amount of the fee, and spent most of it.

In July 1996, the bankruptcy trustee ("Trustee") filed a complaint claiming part of Jess's contingent fee. Jess answered, contending that he wouldn't have collected any fee at all if he hadn't made a recovery for his client, and because that recovery was made after he filed his Chapter 11 petition, the entire recovery belonged to him as post-petition earnings under 11 U.S.C. § 541(a)(6).

The bankruptcy court conducted a trial to resolve the dispute. During the proceeding, Jess conceded (and the Trustee stipulated) that 78% of Jess's work on the Klouds–Pacey litigation was completed prior to his Chapter 11 bankruptcy filing. The bankruptcy court awarded the Trustee a judgment based upon a calculation that 78% of Jess's contingent fee belonged to the estate. Jess filed a motion for a new trial, and that motion was denied.

Jess then appealed to the Bankruptcy Appellate Panel. The BAP affirmed the bankruptcy court's decision, holding that the portion of Jess's contingent-fee payment attributable to pre-petition work was includable in his bankruptcy estate even though he had to perform additional post-petition services to collect the fee. *In re Jess*, 215

---

1. The Honorable Harlington Wood, Jr., Senior Circuit Court Judge for the Seventh Circuit, sitting by designation.

2. Unless otherwise indicated, all references to "chapter" or "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

3. Jess's case was converted to a Chapter 7 case on December 4, 1994.

B.R. 618, 621 (9th Cir. BAP 1997). Jess then filed this timely appeal.

## STANDARD OF REVIEW

Because we are in as good a position as the BAP to review the decision of the bankruptcy court, we review that decision independently. *See Havelock v. Taxel (In re Pace),* 67 F.3d 187, 191 (9th Cir.1995).

## DISCUSSION

### A. Contingent Fee Payments

A bankruptcy estate becomes a legal entity when a bankruptcy petition is filed. *See* 11 U.S.C. §§ 301, 302, 303 and 541(a); *In re FitzSimmons,* 725 F.2d 1208, 1210 (9th Cir. 1984). Notwithstanding certain specified exceptions, the bankruptcy estate includes all legal and equitable interests in property held by the debtor at the time of filing. *See* 11 U.S.C. § 541(a). Section 541(a)(6) specifies that the bankruptcy estate encompasses all "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." *Id.* § 541(a)(6).

■ Jess contends that all of the Klouds–Pacey contingent fee he received is excludable from property of the estate under 11 U.S.C. § 541(a)(6) because the fee constitutes earnings from services he performed after the commencement of his bankruptcy case. Relying on *In re Sloan,* 32 B.R. 607, 611 (Bankr.E.D.N.Y.1983) he contends that earnings received post-petition are not part of the bankruptcy estate unless all of the debtor's services necessary to produce those earnings are rooted in pre-petition acts. We disagree. Payments for pre-petition services are not excludable from the estate solely because post-petition services are required to receive payment. *See In re Ryerson,* 739 F.2d 1423, 1425–26 (9th Cir.1984); *In re Wu,* 173 B.R. 411, 414–15 (9th Cir. BAP 1994) (rejecting explicitly *Sloan's* "all or nothing" approach). The estate is entitled to recover the portion of post-petition payments attributable to pre-petition services.

Jess argues this should not be the result in his case, because his post-petition receipt of the contingent fee was dependent upon his post-petition continued services. He relies on *In re Tully,* 202 B.R. 481, 482 (9th Cir. BAP 1996). There, the court stated: "Where a debtor derives post-petition commissions under a pre-petition contract, and such commissions are dependent upon the continued services of the debtor, they do not constitute property of the estate." *Id.* at 483 (citations and internal quotations omitted). Jess argues his right to receive any part of the Klouds–Pacey compensation was dependent upon his post-petition continued services, and thus the entire contingent fee should be excluded from the estate because it was earned post-petition.

We reject this argument. Jess mischaracterizes the precedent upon which he relies. *Tully* is inapposite because the earnings paid post-petition in that case, unlike here, were solely for post-petition services. Jess's earnings, on the other hand, represented compensation for both pre-petition and post-petition services.

■ Finally, Jess argues he had no cause of action under California law to recover from his client any portion of his fees based on a theory of *quantum meruit* as of June 23, 1994, the day he filed his Chapter 11 petition in bankruptcy. Therefore, he contends, the Trustee could not have collected any portion of the fee on the date Jess filed his Chapter 11 petition, and as a result the entire fee which was received post-petition belongs to him. This argument also fails.

The BAP correctly recognized that Jess's *quantum meruit* argument "does not affect whether the prepetition earnings are property of the estate under section 541(a). While state law may ultimately determine whether an asset is property of the estate, in the final analysis section 541(a) supplies the basic definition." *In re Jess,* 215 B.R. at 622. Moreover, Jess concedes that at the time he filed

his Chapter 11 petition, he would have been entitled to part of the fee if he had been fired and another lawyer successfully finished the case. Although Jess may not have been able to sue his client for a portion of his fee at the time he filed his bankruptcy petition, he had an interest in the fee attributable to pre-petition work on the case. Such an interest is clearly property of the estate under section 541(a)(1). *See In re Ryerson*, 739 F.2d at 1425–26 (holding that a "contract value" payable to an employee upon termination was property of the estate when the employee was fired after filing a bankruptcy petition even though the employee had no right to collect this contract value pre-petition).

The Fifth Circuit has addressed the specific issue before us. In *Turner v. Avery*, 947 F.2d 772–73 (5th Cir.1991), the debtor, an attorney, had contingent-fee cases pending when he filed a Chapter 7 bankruptcy petition. The Fifth Circuit held that the portion of the contingent fee earned pre-petition was property of the estate because a contract on a case subsequently settled or successfully litigated has value on the date of a bankruptcy filing. *Id.* at 774. The court stated:

> Very frequently, as a consequence of the dismissal or withdrawal of counsel, or the death or divorce of a married attorney ... or the voluntary or involuntary dissolution of a partnership, it becomes necessary to place a value on services rendered under a contingent fee contract as of a certain target date. This assessment has proven to be "doable" both factually and legally. Perhaps the most typical example of a quantum meruit division of attorney's fees results from the situation where one attorney begins representation which is completed by a second attorney. Fair and equitable divisions routinely are reached.

*Id.* (citations omitted).

We agree with the Fifth Circuit's analysis. The bankruptcy court and the BAP applied the proper analysis in concluding that Jess earned a portion of his contingent fee pre-petition. In this circuit, a court must

> first determine whether any postpetition services are necessary to obtaining the payments at issue. If not, the payments are entirely "rooted in the pre-bankruptcy past," and the payments will be included in the estate. If some postpetition services are necessary, then courts must determine the extent to which the payments are attributable to the postpetition services and the extent to which the payments are attributable to prepetition services. That portion of the payments allocable to postpetition services will not be property of the estate.

*In re Wu*, 173 B.R. at 414–15 (quoting *Ryerson*, 739 F.2d at 1426).

Jess conceded, and the Trustee stipulated, that 78% of Jess's work on the Klouds–Pacey litigation was performed pre-petition.[4] The bankruptcy court allocated the contingent fee on that basis—78% to the estate and 22% percent to Jess. The court did not err in so doing.

**B. The Bankruptcy Court's Findings**

Jess contends the bankruptcy court's findings are insufficient, and we should remand for additional findings.

Bankruptcy Rule 7052, which incorporates Rule 52 of the Federal Rules of Civil Procedure, requires the bankruptcy court to make findings of fact and conclusions of law in all actions tried upon facts without a jury. *See, e.g., Swanson v. Levy*, 509 F.2d 859, 861 (9th Cir.1975). This is such a case.

The bankruptcy court's findings, to the extent they exist at all, are sparse. The BAP held that the bankruptcy court fulfilled its obligation under Bankruptcy Rule 7052 by adopting the findings proposed by the Trust-

---

4. We should note that Jess made no attempt in the bankruptcy court to place a greater value on his post-petition hours than on his pre-petition hours. Thus, all of Jess's hours were valued equally. We recognize that in a different context it might be possible to establish that hours worked at different stages of a case may have different values. We express no opinion on this question.

ee. Although that might be a permissible way for a trial court to make findings, *see Russian River Watershed Protection Comm. v. City of Santa Rosa*, 142 F.3d 1136, 1140 (9th Cir.1998), we have frequently criticized a trial court's wholesale adoption of a party's proposed findings. *See, e.g., United States v. Washington*, 641 F.2d 1368, 1371 (9th Cir. 1981). In any event, we need not remand this case for further findings.

At several points during the proceeding, the bankruptcy judge explicitly stated that no factual disputes existed in the case. Jess conceded that there were no contested facts, and that on a time basis, 78% of his work on the Klouds–Pacey litigation was performed pre-petition. The Trustee stipulated to this. Thus, the conceded, stipulated and uncontested facts enable us, without any additional factual information, to understand the issues completely and to render judgment. *See Swanson*, 509 F.2d at 861 (failure by a lower court to make required findings does not compel remand if a complete understanding of the issues may be had without the aid of supplemental findings). Supplemental findings are unnecessary to resolve this appeal.

### C. Due Process Claim

██ Jess argues the bankruptcy court precluded him from presenting his case because it reached a decision without affording him a full and fair trial on the issues. This argument lacks merit. The record shows the bankruptcy judge gave Jess a full and fair opportunity to present his case. Jess did not file a brief in the bankruptcy court; instead, he filed only proposed findings of fact and conclusions of law. Even though Jess failed to submit a brief, the bankruptcy judge allowed Jess to submit cases orally for consideration. Based on these cases and the facts at hand, Jess made an oral offer of proof. After allowing Jess to explain the evidence that would show his unique abilities to represent his client in the Klouds–Pacey litigation, the judge accepted Jess's offer of proof but rejected his proposed evidence as irrelevant.

The bankruptcy court was correct. The proposed evidence was irrelevant.

It is apparent from the record that the bankruptcy court afforded Jess every opportunity to make his case. Jess's due process rights were not violated.

### D. New Trial Motion

██ Jess presented no new evidence in his motion for a new trial and raised essentially the same arguments he raised on appeal. The bankruptcy court did not abuse its discretion in denying the motion. *See Pope v. Savings Bank of Puget Sound*, 850 F.2d 1345, 1357 (9th Cir.1988). Nor did the bankruptcy court abuse its discretion in deciding the new trial motion without holding oral argument. *See, e.g.*, Local Bankr.R. 9013–2(a) (Bankr.N.D.Cal.).

### CONCLUSION

The bankruptcy court did not err in determining that the portion of the Klouds–Pacey contingent fee attributable to Jess's pre-petition legal work was properly includable in his bankruptcy estate. Even assuming the bankruptcy court's findings of fact were insufficient, the conceded, stipulated and undisputed facts in the record present a complete picture of the case and permit us to decide this appeal without further findings. The bankruptcy court afforded Jess a full and fair trial on the issues, and exercised its discretion properly in denying his motion for a new trial.

AFFIRMED.[5]

---

5. We have considered each of the other issues raised by Jess in this appeal, but find them to be

so insubstantial that they do not require further discussion.